UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CHRISTOPHER THOMPSON,

                Plaintiff,

   -against-                                  **MEMORANDUM & ORDER**
                                                       Civil Action No. 09-4054
KEYBANK USA N.A. a/k/a/ KEYBANK        (DRH) (AKT)
N.A., GINA DESROSIERS, ALLIED
INTERNATIONAL CREDIT CORP., TRICIA
BALOGH, NORTHEAST MARINE
LIQUIDATION, INC., TCAR, INC. and
D. PEPPER, JR.,

                Defendants

----------------------------------------------------------X

**Appearances:**

**Christopher Thompson, Esq.**
Plaintiff Pro Se
33 Davison Lane East
West Islip, New York 11795

**Moran Karamouzis LLP**
Attorneys for Defendants Key Bank, N.A., Gina Desrosiers and Tricia Balogh
265 Sunrise Highway, Suite 61
Rockville Centre, New York 11570
By: Andrew P. Karamouzis, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff Christopher Thompson ("Plaintiff") commenced this action asserting claims for

violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), as well

as New York State law. Presently before the Court is the motion of defendants KeyBank, N.A.

("KeyBank"), Gina Desrosiers ("Desrosiers"), and Tricia Balogh ("Balogh") to dismiss the

complaint pursuant to Rules 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure and 28 U.S.C. 1406(a).[1] For the reasons set forth below, the motion is granted in part and denied in part.

**Background**

The following allegations are taken from the Complaint.[2]

On or about April 2, 2004, Plaintiff filled out an application for credit with respect to the purchase of a 2004 Chaparral Signature 240 motor boat. (Compl. ¶ 13.) Other than the application Plaintiff did not execute any other documents which obligated Plaintiff to repay any funds arising from the approval or acceptance for the loan application. (*Id.* ¶ 14.) KeyBank "believes" that Plaintiff is obligated to pay KeyBank installment payments of $403.42 each month for a period of 180 consecutive months beginning May 19, 2004 but Plaintiff denies being obligated to KeyBank for such payments. Keybank, however, acknowledges receipt of at least 53 such monthly payments. (*Id.* ¶¶ 15-17.) Keybank did not receive consecutive monthly payments during the summer and fall of 2008 and as a result employed the services of Desrosiers, Balogh and non-moving defendant Allied International Credit Corp. ("Allied"). (*Id.* ¶¶ 18-19.) During the summer and fall of 2008, Allied called Plaintiff stating that "they (an employee of Allied) were calling on behalf of Keybank" and "failed and refused to advise [Plaintiff] that they were: 'attempting to collect a debt, any information given would be used for that purpose and that the

---

[1] The Court notes that the Notice of Motion and Declaration in Support refer to Fed. R. Civ. P. 12(b)(6) whereas the Memorandum of Law in Support refers to Fed. R. Civ. P. 12(b)(3). The Reply Memorandum of Law simply refers to Fed. R. Civ. P. 12.

[2] The Court recognizes that to some extent the recitation is confusing and contradictory; such is a consequence of the way the complaint was drafted.

communications was from a debt collector' all as required by federal statute." (*Id.* ¶ 21.) Some of the calls by Allied were made to Plaintiff's place of business, even after Plaintiff demanded Allied not call him there. Also during this period, Desrosiers and Balogh (who are co-workers)[3] "harassed [Plaintiff] via telephone conversations and writing without advising, among other things; that they were 'attempting to collect a debt, any information given would be used for that purpose and that the communication was from a debt collector' all as required by federal statute." (*Id.* ¶ 22.)

On or about April 10, 2009, Plaintiff wrote to Keybank, Desrosiers and Balogh, advising of the alleged violations of the FDCPA and offering to resolve Plaintiffs claims against them. (Compl. ¶¶ 31-32.) In response, KeyBank, Desrosiers and Balogh, by letter dated April 28, 2009, advised Plaintiff that KeyBank still held the loan and was not operating under a name other than its own. It further advised Plaintiff that Allied was "attempting to collect past due balances on behalf of KeyBank while the loan is housed within KeyBank's outstanding balances." Attached to the April 28, 2009 letter was the Note "which specifically reflects the 'Amount Financed' is $0.00"[4] and Plaintiff claims to have "overpaid" KeyBank by at least $21,381.26. (*Id.* ¶¶ 33-35.)

---

[3]The complaint does not clearly identify by whom Desrosiers and Balogh are employed.

[4] The Court is constrained to note the following: The Note is a printed form onto which certain information including, without limitation, the borrower, the amount financed, the percentage rate and monthly payments are typed. The disclosure statement portion of the Note states the amount financed is $50,000.00, with a finance charge of $22,615.60, for a total amount due of $72,615.60 to be paid in 180 monthly payments of $403.42 each. The complaint's reference to amount financed as "$0.00" is an apparent reference to the portion of the Note entitled "itemization of amount financed." In that section, it would appear that the form was not properly aligned when additional information was "typed" resulting in the typed entries appearing somewhat below their corresponding description. Thus, the "$0.00" referred to in the complaint appears not to relate to the Amount Financed but rather "Total Additional Charges." This conclusion is supported by the fact that, according to the Note, the Amount Financed is the

3

On or about May 15, 2009 Plaintiff received an envelope in the mail which contained only a business card for "D. Pepper, Jr." of "TCAR," "Recovery * Remarketing * Collections". It is claimed that KeyBank, Desrosiers, Allied and Balogh employed the services of TCAR and Pepper to collect payment from Plaintiff. (Compl. ¶¶ 36-37.)

On or about July 2, 2009, Plaintiff received a communication from KeyBank which among other things acknowledged that on April 10, 2009 KeyBank learned of the "theft of its collateral in May 2007." (Compl. ¶ 39.) Plaintiff's motor boat "ha[d] been reported stolen to the Suffolk County Police Department ["SCPD"] . . . on or about May 11, 2007, and was assigned complaint number 07-243172. Thereafter, the SCPD placed a stolen vehicle alarm . . . on the boat under New York State Department of Motor Vehicle laws, rules and regulations . . . ." (*Id.* ¶ 40.) "[A]s a result of the stolen vehicle alarm anyone other than the owner plaintiff in possession of such boat was required to surrender same to the SCPD for impound." (*Id.* at 41.) KeyBank, not having been paid, hired Northeast in August 2009 to repossess the boat. On August 26, 2009, Northeast repossessed the boat (as well as Plaintiff's "assets" that were on the boat), but failed to report said repossession to the Suffolk County Police Department. (*Id.* ¶¶ 42-44.)

Based on the foregoing, as against moving defendants Plaintiff asserts claims under the FDCPA and the New York General Business Law, as well as for harassment and illegal conversion, legal fees, and punitive damages. Plaintiff also seeks to recover from KeyBank the $21,381.26 he "was not required to pay." (Compl. ¶ 54.)

---

"sum of a & b" and "a" states the "Total Loan Proceeds" as $50,000, with "b" stating "Total Additional Charges" as "0.00 $".

4

**Discussion**

I.  **Motion to Dismiss: Legal Standards**

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. at 562. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. "While legal conclusions

5

can provide the framework of a complaint, they must be supported by factual assumptions." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

Finally, "[i]t is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, - - F.3d - -, 2010 WL 4008747, *9 (2d Cir. Oct. 14, 2010) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Treistman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006)). However, "a lawyer representing himself ordinarily receives no such solicitude at all." *Tracy*, 2010 WL 4008747, *10 (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n. 4 (2d Cir.2001)).

## II. Documents Properly Considered on the Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court generally may only consider facts stated in the complaint or "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007); *Gillingham*

6

*v. Geico Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (same). A document not appended to the complaint may be considered if the document is "incorporated [in the complaint] by reference" or is a document "upon which [the complaint] *solely* relies and . . . is *integral to the complaint*." *Roth,* 489 F.3d at 509 (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991)) (emphasis in the original). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)), *see also Cortec Indus.,* 949 F.2d at 47 ("when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] . . . which is integral to the complaint, the defendant may produce [it] when attacking the complaint for its failure to state a claim, because plaintiff should not be allowed to escape the consequences of its own failure"). "However, 'even if the document is "integral" to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.'" *DiFolco*, 622 F.3d at 111 (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

In support of the motion to dismiss, KeyBank has submitted a Consumer Note, Installment Loan, Note, Security Agreement and Disclosure Statement dated April 4, 2004 (the "Note") (*see* Ex. A to Ross Aff.). There being no dispute as to its authenticity, the Court finds the Note is properly considered on this motion as a document incorporated by reference in the complaint and upon which Plaintiff solely relied in asserting the claim for the return of the

7

$21,381.26 and is integral to that claim.[5]

### III. The Action is Dismissed as Against Key Bank Pursuant to the Note's Forum Selection Clause

KeyBank has moved for dismissal of the Complaint because, inter alia, the forum selection clause in the Note requires that any action against it must be brought in Ohio. That clause provides in relevant part as follows:

> You understand that we are located in Ohio and this Agreement will be entered into in Ohio. Our decision on whether to lend you money will be made in Ohio. You will make your payments in Ohio. . . . Consequently the provision of this Agreement shall be governed by federal laws and the laws of the State of Ohio without regard to conflict of law rules. You agree that any suit you bring against us or any subsequent holder of this Agreement must be brought in the county in which we maintain our or the county in which the subsequent holder maintains its principal place of business. . . .

(Note at p.2.)

The Second Circuit has recently reiterated that "'determining whether to dismiss a claim based on a forum selection clause involves a four part analysis'" *S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 708 (2d Cir. 2010) (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007)). That analysis involves the following inquiries: (1) " whether the clause was reasonably communicated to the party resisting enforcement"; (2) whether the clause is "mandatory", i.e. "the parties are required to bring any dispute to the designated forum or simply permitted to do so"; (3) "whether the claims and parties involved in the suit are subject to the forum selection clause." *Id.* "If the forum selection clause was communicated to the resisting

---

[5] Alternatively, the Note is properly considered to the extent moving defendants seek dismissal under Rule 12(b)(3). *See J.B. Harris Inc. v. Razzi Bar Indus. Inc.*, 37 F. Supp. 2d 186, 188 (E.D.N.Y. 1998), *aff'd mem.*, 181 F.3d 82 (2d Cir. 1999).

party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable" and the court should proceed to the fourth inquiry, which is "whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.*

Here the forum selection clause was reasonably communicated to the Plaintiff. Plaintiff, an attorney, signed the Note containing the forum selection clause. While Plaintiff complains that the instant contract was one of "adhesion . . .with a choice of venue clause set forth as 'boilerplate' on the back of the contract," (Pl.'s Mem. in Opp. at 6) he does not contest that the clause was reasonably communicated. Indeed, next to the provision at issue is the caption "**PARAGRAPH HEADINGS AND GOVERNING LAW AND CHOICE OF FORUM.**" (Note at p. 2 (capitalization and bold in original).)

Proceeding to whether the provision is mandatory or permissive, the Court must determine whether the parties are required to bring any dispute to the designated forum or simply permitted to do so. In determining whether the forum selection clause is mandatory or permissive the "initial focus in on the language in the contract." *S.K.I. Beer*, 612 F.3d at 708. "When only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive. Of course if mandatory venue language is employed, the clause will be enforced." *Id.* (internal quotations omitted); *see also Phillips*, 494 F.3d 378, 387 (2d Cir. 2007) ("Obligatory venue language suffices to give mandatory force to a forum selection clause."). The forum selection clause in the

9

Note requires that any action by Plaintiff against KeyBank "must" be brought in the county in Ohio in which KeyBank maintains its principal place of business. Therefore the forum selection clause is mandatory vis a vis an action brought by Plaintiff. *Cf. Macsteel Int'l USA Corp. v. M/V Larch Arrow*, 354 Fed. Appx. 537, at *3 (2d Cir. Dec. 1, 2009) (Summary Order) ( holding language that the dispute was "to be decided" in London made forum selection clause mandatory); *Interframe Finance Corp. v. Kennedy Funding, Inc.*, 2010 WL 2607159 (S.D.N.Y. June 29, 2010) (holding provision that venue "shall" be proper in New Jersey to the exclusion of courts in any other state or country was mandatory).

The third inquiry is whether the claims and parties are subject to the forum selection clause. The clause at issue is broadly worded to require that "any suit" brought by plaintiff against Keybank be brought in the county of its principal place of business. It covers any dispute between Plaintiff and KeyBank, even an alleged violation of a federal statute. It is not, however, worded broadly enough to require its application to an action brought by Plaintiff against employees or agents of KeyBank. Had the parties intended for the forum selection clause to include such individuals they should included language that any action against KeyBank "its officer or employees or agents" must be commenced in the specified forum. As the provision is not broad enough to cover Desrosiers or Balogh, to the extent they seek dismissal under the forum selection clause their motion is denied.

Having determined that the forum selection clause was communicated to Plaintiff, has mandatory force, and covers the claims by Plaintiff against KeyBank, the forum selection clause is presumptively enforceable. The question therefore becomes whether Plaintiff has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would

be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching. He has not. Plaintiff simply argues that the provision should not be enforced because it is contained in a standard form contract which he denotes as a contract of adhesion. However, simply because a forum selection clause is contained in a form consumer contract and not subject to negotiation does not make it unenforceable. See *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 589-95, 111 S. Ct. 1522 (1991) (holding that forum selection clause can bind parties even where agreement at issue is form consumer contract and not subject to negotiation); *G & R Moojestic Treats Inc. v. MaggieMoo's Int'l, LLC*, 2004 U.S. Dist. LEXIS 8806, at *9-11 (S.D.N.Y. May 19, 2004) ("The ... Plaintiffs have not made the 'strong showing' required to prove that the forum selection clause was the result of fraud or coercion.... The fact that the ... Agreement was presented on a take it or leave it basis and was not subject to negotiation renders it neither a contract of adhesion nor unconscionable."); *Vitriol, Inc. v. Midwest Elastomers, Inc.*, 148 F. Supp. 2d 245, 248 (E.D.N.Y.2001) ("Courts have consistently rejected the argument that forum selection clauses contained in pre-printed contracts are unenforceable."); *CCD Imports, Inc. v. Karl Heinz Dietrich GmbH & Co. Intern. Sedation*, 36 F. Supp. 2d 200, 203 (S.D.N.Y.1999) (finding forum selection clause enforceable even though parties did not discuss or negotiate it); *Strategic Mktg. & Commons. v. Kmart Corp.*, 41 F. Supp. 2d 268, 272 (S.D.N.Y.1998) ("A forum selection clause can bind contracting parties even when the contract in question is a form contract and not subject to negotiation."); *Stamm v. Barclays Bank*, 960 F. Supp. 724, 733 (S.D.N.Y.1997) (finding forum selection clause not unconscionable despite the fact that the clause is "now disadvantageous to Plaintiffs" and that it was presented to plaintiffs on a take it or leave it basis).

Having determined that the forum selection clause is presumptively enforceable and that Plaintiff has failed to sustain his burden of rebutting the presumption of enforceability, KeyBank's motion to dismiss is granted.

## IV. Motion to Dismiss by Balogh and Desrosiers is Denied

Balogh and Desrosiers seek dismissal of the FDCPA claims asserted against them on two additional grounds: (1) the claims are barred by the statute of limitations, and (2) as employees of a creditor, they are not liable under the FDCPA. The Court will address each argument in turn.

### A. Statute of Limitations

The statute of limitations for an action under the FDCPA is set forth in 15 U.S.C. § 1692k(d) which provides in pertinent past that "[a]n action to enforce any liability created by this title may be brought . . . within one year from the date on which the violation occurs." The instant action was commenced on September 21, 2009.

Plaintiff "concede[s] communication in the Summer of 2008 cannot be pursued herein." (Pl.s' Mem. in Opp. at 9.) Accordingly, claims based on events in the Summer of 2008 are dismissed. There are, however, allegations against Desrosiers and Balogh concerning events in the "Fall of 2008", i.e. after September 21, 2008, as well as allegations concerning events in 2009. (*See, e.g.,* Compl. ¶¶ 18, 20, 22, 25 28.) As to these events, the motion to dismiss on statute of limitations grounds is denied.

### B. Employees of a Creditor

The FDCPA prohibits "debt collector[s]" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The FDCPA defines the term "debt collector" as follows:

any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include--
(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;
(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;
(C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;
(D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;
(E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and
(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (I) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a.

"As a general matter, creditors are not subject to the FDCPA." *Maguire v. Citicorp.*

*Retail Services Inc.*, 147 F.3d 232, 235 (2d Cir. 1998). *Accord Nichols v. Washington Mut. Bank*, 2007 WL 4198252 (E.D.N.Y. Nov. 21, 2007); *Schmitt v. FMA Alliance*, 398 F.3d 995, 998 (8th Cir. 2005) (holding FDCPA "does not regulate creditors' activities at all") (quoting *Randolph v. I.M.B.S.,* 368 F.3d 726, 729 (7th Cir. 2004)). The FDCPA also excludes from its definition of "debt collector" officers or employees of a creditor working to collect a debt in the creditor's name, 15 U.S.C. § 1692a(6)(A); *see Schuh v. Drickman & Sinel, LLP*, 602 F. Supp. 2d 454 (S.D.N.Y. 2009*)*, and any entity acting as a debt collector for another entity where both entities are "related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts." *Id.* at § 1692a(6)(B). Further, the mere fact that a creditor employs a debt collector to recover its debts does not make the creditor vicariously liable for the acts of the debt collector. *Kolari v. New York-Presbyterian Hosp.*, 382 F. Supp. 2d 562, 573 (E.D.N.Y. 2005), *rev'd in part on other grounds*, 455 F.3d 118 (2d Cir. 2006) (citing *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 107 (6th Cir.1996)); *Doherty v. Citibank (South Dakota), N.A.*, 375 F. Supp. 2d 158, 162 (E.D.N.Y. 2005).

The FDCPA contains, however, the "false name exception" whereby a creditor becomes subject to the FDCPA if "'in the process of collecting his own debts, [the creditor] uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.'" *Mazzei v. Money Store*, 349 F. Supp. 2d 651, 658-60 (S.D.N.Y.2004) (quoting 15 U.S.C. § 1692a(6)). "A creditor uses a name other than its own when it uses a name that implies that a third party is involved in collecting its debts, 'pretends to be someone else,' or 'uses a pseudonym or alias,'" *Maguire*, 147 F.3d at 235 (quoting *Villarreal v. Snow,* 1996 WL 473386,

at *3 (N.D.Ill. Aug. 19, 1996)), or when a creditor "owns and controls the [pseudonymous] debt collector, rendering it the creditor's alter ego." *Mazzei*, 349 F. Supp. 2d at 659 (citing *Maguire*, 147 F.3d at 234-36).

Desrosiers and Balogh maintain that KeyBank is not a debt collector within the meaning of the FDCPA, but rather a creditor and that as they are employees of a creditor collecting a debt in the name of the creditor they are also excluded from the definition of a debt collector. Plaintiff responds that KeyBank is a debt collector under the false name exception, asserting that it is using a name other than its own, i.e. Allied, to collect debts.

Turning first to Plaintiff's false name argument, the Court finds it to be without merit. The complaint alleges that Allied is an Arizona entity and that KeyBank "employed the service of . . . Allied . . . for the purposes of attempting to collect such payments from plaintiff." (Compl. ¶¶ 5, 19.) Conspicuously absent from the complaint are any factual allegations that KeyBank was pretending to be someone else or using a pseudonym or alias, i.e. Allied, or that KeyBank owns and controls Allied. *See Mazzei*, 349 F. Supp.2d at 658. The complaint simply alleges that KeyBank allowed Allied to use the name KeyBank in its solicitations and to state it was calling on KeyBank's behalf "when in fact such statements were untrue." (Compl. at ¶ 51). No specific facts are alleged to support this assertion.

With respect to Desrosiers' and Balogh's argument, the complaint does not allege that they are employees of KeyBank. If the complaint had so alleged, given that under the allegation in the complaint KeyBank is a creditor and not a debt collector as defined in the FDCPA, the FDCPA claims against Desrosiers and Balogh would be dismissed pursuant to 15 U.S.C. § 1692a(6)(A). As it does not appear from the face of the complaint that Desrosiers and Balogh are

employees of KeyBank, their motion to dismiss is denied.

## Conclusion

KeyBank's motion to dismiss is granted. The motion of Desrosiers and Balogh to dismiss is denied.

Dated: Central Islip, New York
      December 1, 2010

                                          /s/
                                          Denis R. Hurley
                                          Senior District Judge